## GLENN *v.* CASE, *admx.*

CONFEDERATE MONEY—*when it satisfies a debt.* A note was *paid* and *satisfied* by a payment, in July, 1863, in this State, of *Confederate treasury notes,* received by the holder of the note without any evidence of threats or protest, even where martial law prevailed, and a military order rendered the receipt of such money compulsory.

Relief will not be granted where parties are *in pari delicto.*

*Appeal from Independence Circuit Court.*

Hon. RICHARD H. POWELL, Circuit Judge.

WATKINS & ROSE, for appellant.

WASSELL & MOORE, for appellee.

WILSHIRE, C. J.

In this case William W. Glenn filed his bill of complaint, on the chancery side of the Independence circuit court, at the November term, 1867, against Sarah Case, as administratrix of George Case, deceased, the object of which was to declare a debt due from George Case, on the first day of July, 1863, and on that day paid by him to complainant, in Confederate treasury notes, to be a claim against the estate of said Case, for the difference between the actual value, on that day, and the face of the Confederate notes.

At the hearing, the court below dismissed the bill, and entered a decree against the complainant for costs, and he appealed to this court.

The material allegations of the bill are, that George Case, on the 29th day of October, 1860, in his life-time, made his note, believed to be under seal, for the sum of $250, payable to William W. Glenn, one day after date, with interest at ten per cent. per annum, from date, till paid; that said note was due and wholly unpaid on the first day of July, 1863, and the said Case, at that time, applied to and required the complainant to receive and take in payment of said note Confederate treasury notes at their par value; that, at that time, the county of Independence was within the Confederate military lines, and under the command of General Thomas C. Hindman, an officer of the Confederate army, who but a short time before had proclaimed martial law within the State of Arkansas, and, by an order to the people, commanded them to receive Confederate

treasury notes at par, as a common circulating medium, in all business transactions, under the pain and penalty of trial and punishment, by a court-martial, for disobedience to such order, which, the complainant alleges, was in force on the first day of July, 1863; that said Case, at that time, took advantage of the proclamation and military order of said Confederate military commander, and the unsettled condition of the country, and threatened the said complainant, if he refused to take Confederate treasury notes in payment of the amount of the note due from him to complainant, to report complainant to the nearest provost marshal, to be dealt with according to the conditions of said military order; that the complainant, fearing the results in such case, and being intimidated by such threats, and knowing the severity as well as the uncertainty of military law, received from said Case the amount due on the note in Confederate treasury notes, at par, and gave up Case's note to him; but, at the time of doing so, the complainant protested against the unfair and oppressive conduct of Case, and declared that he did not consider the note as settled or paid; and the complainant prayed that the defendant be required to bring said note into court, and that an account be taken of the actual value of the Confederate treasury notes at the time they were received by him, and that amount allowed as a credit on the note of Case, and the balance due upon said note be declared to be a claim against the estate of said Case, and the defendant, or his administratrix, be directed to pay the same to the complainant.

The defendant, by her answer, denies any knowledge of the debt, alleged in the bill of complaint to be due from her intestate to the complainant, but states, as her belief, that her intestate was at one time indebted to the complainant in some amount, which she alleges was fully paid off and discharged, in the life-time of her intestate, without any force, threats or compulsion on his part. She stated that the note mentioned in the complainant's bill of complaint, is not in her possession, and that she can find nothing pertaining to it in the papers of her intestate, &c.

The proof adduced upon the hearing does not establish the allegation of threats and compulsion, charged in the bill. None of the witnesses testify that they were present when Case paid the debt, alluded to in their depositions, due from him to Glenn. They all allude to conversations with Case, either before or after the payment. It is true that some of the witnesses state that Case told them, before the payment, that he intended to make Glenn take Confederate money in payment of the debt due from him.

The testimony of Williams and Burr is, that Case told them he had paid Glenn in Confederate money ; and Burr states that in the conversation with Case, after the debt was paid, Case told witness, that Glenn said, when the payment was made, that " he had no use for the money." There is no testimony to show that Case, at the time of payment, or at any other time, made the threats charged in the bill.

If a debtor induces his creditor to receive from him any thing but lawful money, in discharge of his demand, by threats of imprisonment, and the creditor has reasonable grounds to believe that his debtor is in a condition to execute the threat, it is a receipt under duress, and will not discharge the debt. It is as essential to the complete discharge of a debt, payable in money, in any thing but lawful currency, that the free, unrestrained consent of the creditor should be coupled with the receipt of such by him. In this case, had the complainant proven the threat alleged in his bill, he would, undoubtedly, have been entitled to relief. But, as there is no evidence to support the allegation of threat and compulsion, the transaction must be treated as an executed contract between the parties.

It was held by this court, in the case of *Latham v. Clark*, decided at the present term, that contracts base upon or for the payment of " Confederate money," was opposed to public policy, illegal and void. We think that executed contracts of this character should not be disturbed. The parties, as was held in *Latham v. Clark*, being *in pari delicto*, the courts will

not grant any relief, but will leave them in the condition in which they have put themselves and in which the courts find them.    This doctrine is laid down by Story, in his treatise on contracts.    He says, on this subject, that " relief will never be granted where the parties are *in pari delicto*, unless in cases where public policy would be thereby promoted; for it is not the benefit of the party, but of the public, that is regarded."

We find no error in the record of the court below.  The judgment is affirmed.